# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Ronald D. Kendall,

              Plaintiff,

v.

International Association of Bridge,
Structural, and Ornamental Iron
Workers Local 793 Pension Plan, n/k/a
Twin City Iron Workers Plan; American
Benefit Plan Administrators, Inc.; Twin City
Iron Workers Pension Plan; Board of
Trustees of the Twin City Iron Workers
Pension Plan; and Wilson-McShane
Corporation,

              Defendants.

**MEMORANDUM OF LAW & ORDER**

Civil File No. 10-3140 (MJD/JJG)

David E. Wandling, Wandling Law Group, PC, counsel for Plaintiff.

Deborah A. Ellingboe, Justin P. Krypel, and Steve L. Severson, Faegre and Benson LLP, Counsel for Defendants International Association of Bridge, Structural, and Ornamental Iron Workers Local 793 Pension Plan, Twin City Iron Workers Plan, Board of Trustees of the Twin City Iron Workers Pension Plan, and Wilson-McShane Corporation.

Jessica J. Nelson and Ruth S. Marcott, Felhaber Larson Fenlon & Vogt, PA, Counsel for Defendant American Benefit Plan Administrators.

## I.     INTRODUCTION

This matter is before the Court on Defendants International Association of

Bridge, Structural, and Ornamental Iron Workers Local 793 Pension Plan's ("793

Plan"), Twin City Iron Workers Plan's ("TCIW Plan"), Board of Trustees of the

Twin City Iron Workers Pension Plan's ("Plan Trustees"), and Wilson-McShane

Corporation's ("Wilson-McShane") Motion to Dismiss and to Strike Jury

Demand [Docket No. 7], as well as Defendant American Benefit Plan

Administrators, Inc.'s ("ABPA") Motion to Dismiss and Strike Jury Demand.

[Docket No. 11]  Oral argument was heard Friday, January 7, 2011.

## II.    FACTUAL BACKGROUND

### A. Parties

Defendant 793 Plan is a pension plan governed by the Employment

Retirement Income Security Act of 1974 ("ERISA") which provides retirement

and pension benefits to unionized iron workers in North Dakota, including but

not limited to the Plaintiff.  (Compl. ¶ 2.)  Defendant ABPA, a California

corporation, acting as the agent of the 793 Plan, administered the 793 plan.  (Id. ¶

3.)  On or about December 31, 2005, the 793 Plan was merged with the TCIW

Plan, and the assets and liabilities of the 793 Plan were assumed by the TCIW

Plan.  (Id. ¶ 7.)  Defendant TCIW Plan is a pension plan governed by ERISA

which provides retirement and pension benefits to unionized workers in various

states, including Minnesota and North Dakota.  (Id. ¶ 4.)  Defendant Plan

Trustees are responsible for determining issues related to the TCIW Plan, such as

determining disputes between the Plaintiff and the TCIW Plan concerning the

adequacy of pension benefit payment to Plaintiff from the TCIW Plan.  (Id. ¶ 5.)

Defendant Wilson-McShane, a Minnesota corporation, administers the TCIW

Plan.  (Id. ¶ 6.)

Plaintiff Kendall is an individual currently residing in Big Lake,

Minnesota.  (Id. ¶ 1.)  Plaintiff is a former iron worker whose work was covered

under the 793 Plan and the TCIW Plan.  (Id. ¶¶ 10-11, 14.)

**B.  Kendall's Employment and Pension Contributions**

Plaintiff began his career working as an ironworker while he was living in

North Dakota, and he began participating in the 793 Plan in approximately 1977.

(Id. ¶ 10.)  During Plaintiff's career he did work outside of his home jurisdiction,

which was not covered by the 793 Plan.  (Id. ¶ 12.)  When Plaintiff worked

outside of his jurisdiction, contributions were made on his behalf to the pension

plan which covered that jurisdiction.  (Id. 13.)  For the years 1988 through 2000,

contributions were made to the TCIW Plan for work which Plaintiff performed in

the Twin Cities.  (Id. ¶ 14.)  The TCIW Plan was required to "reciprocate" each of

these contributions to the 793 Plan.  (Id.)

The terms and provisions of the TCIW Plan and the 793 Plan, including

contribution rates and retirement benefits, differed.  (Id. ¶ 15.)  Both ABPA and

Wilson-McShane, on multiple occasions, informed Plaintiff that when

contributions were reciprocated by plans from other jurisdictions, including the

TCIW Plan, adjustments were made by the 793 Plan to Plaintiff's account to

compensate for contributions provided by outside jurisdictions where the hourly

pension contribution rates may have been lower or higher.  (Id. ¶ 16.)  ABPA and

Wilson-McShane informed the Plaintiff on multiple occasions that these

adjustments were made by increasing or decreasing the hours to accurately

reflect the effective 793 Plan value of each reciprocated contribution, since the

793 Plan determined retirement benefits as a function of hours worked and an

hourly compensation rate.  (Id. ¶ 17.)

Moreover, ABPA and Wilson-McShane informed the Plaintiff that, since

the TCIW Plan had a higher contribution rate per hour than the 793 Plan, any

contributions reciprocated by the TCIW Plan would need to be adjusted upward

for the Plaintiff to receive the appropriate contribution amount under the 793

Plan.

ABPA and Wilson-McShane on several occasions informed the Plaintiff

that with these adjustments the 793 Plan and the TCIW Plan credited him with

working the following hours ("Credited Pension Hours"):  1977 – 2,086 hrs; 1978

– 2,037 hrs; 1979 – 1,628 hrs; 1980 – 1,612 hrs; 1981 – 1,359 hrs; 1982 – 1,783 hrs;

1983 – 2,167 hrs; 1984 – 517 hrs; 1985 – 1,110 hrs; 1986 – 3,633 hrs; 1987 – 2,538

hrs; 1988 – 7,427 hrs; 1989 – 6,970 hrs; 1990 – 4,360 hrs; 1991 – 7,667 hrs; 1995 –

1,326 hrs; 1996 – 5,237 hrs; 1997 – 5,590 hrs; 1998 – 4,301 hrs; 1999 – 3,311 hrs;

2000 – 3,284 hrs; 2001 – 2,500 hrs; 2002 – 2,500 hrs; 2003 – 2,500 hrs; 2004 – 2,470

hrs; 2005 – 2,539 hrs; 2006 – 1,907 hrs; 2007 – 1,516 hrs; 2008 – 1,963 hrs.  (Id. ¶ 19.)

In 2001, the terms of the 793 Plan were changed so that a 2,500 hour

maximum was placed on each employee covered under the Plan, such that an

employee could only get credit for a maximum of 2,500 hours worked.  (Id. ¶ 20.)

Additionally, both ABPA and Wilson-McShane advised Plaintiff that the Hourly

Contribution Rates during Plaintiff's employment were as follows: November

1977 through October 1979 - $.70; November 1979 through July 1982 – $.80;

August 1982 through July 1984 - $1.20; August 1984 through September 1995 - $

1.70; October 1996 through September 1997 - $2.64; October 1997 through September 1998 - $3.20; October 1998 through September 1999 - $3.70; October 1999 through September 200 - $.44; October 2000 through April 2002 - $2.69; May 2002 through April 2003 -$3.00; May 2003 through April 2004 - $3.50; May 2004 through April 2005 -$4.51; May 2005 through September 2005 - $8.01; October 2005 through December 2005 - $4.51; 2006 - $6.70.  (Id. ¶ 23.)

Plaintiff was informed by ABPA and Wilson-McShane that the monthly pension benefit Plaintiff was entitled to was calculated by the following formula: (Credited Pension Hours) X (Hourly Contribution Rate) X (Pension Benefit Rate). (Id. ¶ 24.)  The applicable Pension Benefit Rate for the 793 Plan was 4.3% for contributions made between 1988 and September 30, 1995, and 3.56% for contributions made on or after October 1, 1995.  (Id. ¶¶ 25-26.)

ABPA and Wilson-McShane represented to Plaintiff on several occasions that Plaintiff was entitled to the following monthly pension payments for each of the following years:

        1988- $ 542.91
        1989- $ 509.51
        1990- $ 318.72
        1991- $ 560.46
        1992- $ 0.00
        1993- $ 0.00

1994- $ 0.00
1995- $ 110.93
1996- $ 492.19
1997- $ 636.81
1998- $ 566.53
1999- $ 523.35
2000- $ 249.20
Total- $4,510.61

(Id. ¶ 27.)

During Plaintiff's employment, the 793 Plan, ABPA, the TCIW Plan, and Wilson-McShane informed the Plaintiff, that the retirement benefits the plaintiff accrued were measured by the number of "pension hours" attributed to the Plaintiff during his employment.  (Id. 21.)

Throughout his employment, Plaintiff asked the 793 Plan, ABPA, the TCIW Plan, and Wilson-McShane whether the statements he was provided accurately represented his Credited Pension Hours, and whether the monthly benefit calculation described above was how Plaintiff's monthly pension benefit entitlements were calculated.  (Id. 28.)  On every occasion that Plaintiff asked, he was informed that his calculations concerning his benefits entitlements were correct.  (Id.)

Plaintiff continued his employment and planned additional savings to reach his retirement objectives due to his reliance on these representations.  (Id. ¶

29.)  When the Plaintiff retired in 2009 and began receiving monthly pension

distributions, he discovered that he was receiving benefits in an amount

$1,894.40 less than he expected.  (Id. ¶ 31.)  Upon learning of this alleged

deficiency, Plaintiff wrote a letter to Wilson-McShane, dated June 10, 2009,

requesting that it recalculate, correct, and increase the Plaintiff's monthly benefit

by $1,894.40.  (Id. ¶ 32.)

Wilson-McShane refused to increase Plaintiff's monthly benefit payment,

and informed Plaintiff that his monthly 793 Plan benefit calculation was not

determined according to Plaintiff's Credited Pension Hours, nor did the 793 Plan

take into account differing contribution rates between different jurisdictions.  (Id.

¶ 33.)  Wilson-McShane told Plaintiff that the monthly benefit calculation under

the 793 Plan was calculated based upon the dollar amount of contributions

reciprocated to the 793 Plan on Plaintiff's behalf.  (Id.)

Plaintiff appealed Wilson-McShane's decision to the Plan Trustees.  By a

letter dated February 19, 2010, the Plan Trustees upheld Wilson-McShane's

decision, and stated that the 793 Plan calculation provisions, along with the

representations made to Plaintiff were not relevant to Wilson-McShane's

determination of Plaintiff's monthly benefit entitlement.  (Id. ¶ 35.)

### C. Procedural Background

On July 27, 2010, Plaintiff filed a Complaint in this Court, alleging six counts.  [Docket No. 2]  Count I: Violations of ERISA against all Defendants; Count II: Breach of Contract against the 793 Plan, ABPA, the TCIW Plan, and Wilson-McShane; Count III: Promissory Estoppel against ABPA and Wilson-McShane; Count IV: Breach of Fiduciary Duty against ABPA and Wilson McShane; Count V: Negligence against ABPA and Wilson-McShane; and Count VI Negligent Misrepresentation against ABPA and Wilson-McShane.

On September 7, 2010, Defendants the 793 Plan, the TCIW Plan, the Plan Trustees, and Wilson-McShane brought a Motion to Dismiss and to Strike Jury Demand.  [Docket No. 7]  This motion seeks to dismiss Counts II through VI. Additionally, the motion seeks to dismiss Count I of the Complaint to the extent that it is brought against Defendants 793 Plan and Wilson-McShane.  Finally, the motion seeks to dismiss Count I of the Complaint with regard to the TCIW Plan and the Plan Trustees to the extent that it claims anything other than a claim for benefits under 29 U.S.C. § 1132(a)(1)(B).

On September 9, 2010, Defendant ABPA brought a Motion to Dismiss and Strike Jury Demand.  [Docket No. 11]  ABPA seeks dismissal of all claims

asserted against it.  Additionally, ABPA joined in the other Defendants' motion

in all respects.  (ABPA's Mem. of Law 1)

Subsequently, Plaintiff has agreed to dismiss Count II: Breach of Contract,

Count V: Negligence, and Count VI: Negligent Misrepresentation, because

Plaintiff has acknowledged that these claims were subject to ERISA preemption.

(Pl.'s Opp'n 21-22.)

## III.    DISCUSSION

### A. Legal Standard for a Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may

move the Court to dismiss a claim if, on the pleadings, a party has failed to state

a claim upon which relief may be granted.  In reviewing a motion to dismiss, the

Court takes all facts alleged in the complaint to be true.  <u>Zutz v. Nelson</u>, 601 F.3d

842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is
> plausible on its face.  Thus, although a complaint need not include
> detailed factual allegations, a plaintiff's obligation to provide the
> grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do.

<u>Id.</u> (citations omitted).

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, a court may consider certain outside materials, such as matters of public record, materials that do not contradict the complaint, exhibits attached to the complaint, and materials that are necessarily embraced by the pleadings, without converting the motion into one for summary judgment.  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

### B.  Proper Defendants

Defendants contend that the 793 Plan, ABPA, and Wilson-McShane should be dismissed from this action, because they are not proper parties to be sued in this case.  The proper defendant in an ERISA action is the party which controls administration of the plan.  Layes v. Mead Corp., 132 F.3d 1246, 1249 (8th Cir. 1998).  "Where a defendant is [in] no position to pay out benefits to the plaintiff, the defendant is not the proper party to be sued."  Harris v. SWAN, Inc., 459 F. Supp. 2d 857, 862 (E.D. Mo. 2005) (citing Hall v. LHACO, Inc., 140 F.3d 1190, 1195 (8th Cir. 1998)).

The 793 Plan is dismissed because the 793 Plan no longer exists.  <u>Peralta v.</u>

<u>Hispanic Bus., Inc.</u>, 419 F.3d 1064, 1073 (9th Cir. 2005) ("[T]here is no possibility

that Peralata can recover any benefits under the now-defunct plan pursuant to §

1132(a)(1)(B).").  Accordingly, because there is no way Plaintiff can recover

benefits from the nonexistent 793 Plan, any claims made against that plan must

be dismissed.

Furthermore, ABPA is not a proper defendant in this action, because

Plaintiff does not have standing to bring claims against ABPA, since ABPA no

longer provides services to either of the plans.  Article III standing requires that a

plaintiff demonstrate that (1) they have suffered an "injury in fact" which is

concrete and particularized, and actual or imminent; (2) the injury is fairly

traceable to the action of the defendant; and (3) "it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision."  <u>Friends of</u>

<u>the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180-81 (2000)

(citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)).

The facts of this case are similar to those in the Eight Circuit's opinion in

<u>Hall v. Lhaco, Inc.</u>, 140 F.3d 1190 (8th Cir. 1998).  In <u>Hall</u> the plaintiff brought suit

under 29 U.S.C. §§ 1132(a)(1)(B) for benefits and 1132(a)(3) for a breach of

fiduciary duty against a corporation that previously provided administrative

services to the plaintiff's ERISA plan, but was no longer associated with the plan.

Id. at 1192-93.  The Eighth Circuit found that the plaintiff lacked standing to

bring his § 1132(a)(1)(B) claim against the former administrator because the claim

was not redressable since the former plan administrator no longer had any

connection with the plan.  Id. at 1195-96.  The court found that since the

corporation was no longer associated with the plan, it was not in a position to

pay out benefits to the plaintiff.  Id. at 1196.  Additionally, the Hall court held

that the plaintiff did not have standing to pursue any injunctive relief against the

former administrator.  Id. at 1197-97.

For the same reasons as in Hall, ABPA is not an appropriate party to be

sued in this case, because Plaintiff's claims are not redressable against ABPA,

since ABPA has no control or discretion concerning Plaintiff's benefits.  Thus,

ABPA must be dismissed as a party to this action.

Defendants assert that Wilson-McShane is not a proper party to be sued in

this case because (1) Wilson-McShane is not capable of paying out benefits under

the TCIW plan because it does not control the plan's administration, and (2)

because Wilson-McShane is a non-fiduciary service provider.

Wilson-McShane is designated as the Claims Administrator for the TCIW Plan, and the Plan Trustees are designated as the Plan Administrator for the TCIW Plan.  Within its role as the Claims Administrator, Wilson-McShane is delegated administrative responsibilities by the Plan Trustees.  These responsibilities include conducting an initial review of a claim for benefits, in which Wilson-McShane makes an initial determination concerning benefit eligibility.  If Wilson-McShane denies a beneficiary's claim, then the beneficiary may appeal Wilson-McShane's denial to the Plan Trustees.  If Wilson-McShane's decision is not appealed, then that decision becomes final.

Given this record, and because this matter is before the Court on a motion to dismiss, the Court cannot determine the extent to which Wilson-McShane controlled administration of the plan.  Although Wilson-McShane's initial benefits determinations are appealable to the Plan Trustees, in cases where a beneficiary does not appeal Wilson-McShane's decision, that decision becomes a final determination on a party's benefits eligibility.  Thus, at this stage, the Court cannot determine whether Wilson-McShane controlled administration of the plan and is capable of paying Plaintiff the benefits he seeks.

Additionally, given the record before the Court and the standard of review for a motion to dismiss, the Court finds that Plaintiff has pled sufficient facts to allege that Wilson-McShane is a fiduciary of the TCIW Plan.  ERISA defines a fiduciary as a person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority of control respecting management or disposition of its assets."  29 U.S.C. § 1002(21)(A).  Furthermore, ERISA defines a fiduciary as a person who "has any discretionary authority or discretionary responsibility in the administration of such plan."  Id. As stated above, Wilson-McShane is delegated authority to make initial decisions concerning benefit eligibility, and if these decisions are not appealed they become final and determine the disposition of plan benefits.  At this stage in the litigation, Plaintiff has pled facts that Wilson-McShane exercises some discretion with regard to the control of the TCIW Plan and its disposition of assets.

Accordingly, at the motion to dismiss stage, the Court will not dismiss Wilson-McShane as a party to the action.  See Price v. Xerox. Corp., 379 F. Supp. 2d 1026, 1028 (D. Minn. 2005) (refusing to dismiss a defendant that argued that it was not a proper defendant because the court could not determine which defendant or defendants controlled administration of the plan in question).

### C.  ERISA Preemption of State Claims

As discussed above, Plaintiff has agreed to dismiss Counts II, V, and VI,

because they are preempted by ERISA.  Accordingly the Court will dismiss these

Counts of Plaintiff's Complaint with prejudice.

### D. ERISA Claims

Plaintiff asserts that his Complaint properly alleges various violations of

ERISA.  Plaintiff alleges in Count I of his Complaint that the Defendants have

violated 29 U.S.C. § 1132(a).  Count I, however, does not articulate precisely

which provisions of § 1132(a) Defendants have violated.  In his memorandum,

Plaintiff states that he has articulated a claim for benefits under § 1132(a)(1)(B), a

claim for breach of fiduciary duty under § 1132(a)(2) and § 1109, a claim for

equitable relief under § 1132(a)(3), and a claim for failure to provide accurate and

timely statements reflecting Plaintiff's pension benefits under § 1132(a)(4).  (Pl.'s

Opp'n 12-13)

### 1.    Claim for Benefits under 29 U.S.C. § 1132(a)(1)(B)

Title 29 U.S.C. § 1132(a)(1)(B) states that "a civil action may be brought by

a participant or beneficiary to recover benefits due to him under the terms of his

plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

The Defendants acknowledge that Count I of Plaintiff's Complaint has alleged that the Defendants have failed to provide the Plaintiff with benefits totaling $568,320.  Defendants do not dispute that the Plaintiff's Complaint has stated a claim for benefits under 29 U.S.C. § 1132(a)(1)(B).  (Defs.' Mem. of Law 11)  Defendants contend however, that Plaintiffs' benefit claim under § 1132(a)(1)(B) should be dismissed to the extent the claims are being made against any party other than the TCIW Plan and the Plan Trustees, because these are the only parties capable of paying Plaintiff the benefits sought.  As articulated above, the 793 Plan and ABPA are not proper parties in a claim for benefits, since they are not capable of paying Plaintiff the benefits to which he states he is entitled. Again, as described above, the Court has not dismissed Wilson-McShane as an improper defendant at this time, and thus Plaintiff's claim under § 1132(a)(1)(B) remains against Wilson-McShane, as well as against the TCIW Plan and the Plan Trustees.

## 2.    Breach of Fiduciary Duty under 29 U.S.C. § 1132(a)(2)

Plaintiff asserts that he is entitled to monetary damages against ABPA, the

TCIW Plan, the Plan Trustees, and Wilson-McShane for their breaches of

fiduciary duty pursuant to 29 U.S.C. § 1132(a)(2) and § 1109.

Section 1132(a)(2) states that "A civil action may be brought by the

Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief

under section 1109 of this title."  Section 1109 provides that:

> Any person who is a fiduciary with respect to a plan who breaches
> any of the responsibilities, obligations, or duties imposed upon
> fiduciaries by this subchapter shall be personally liable to make
> good to such plan any losses to the plan resulting from each such
> breach, and to restore to such plan any profits of such fiduciary
> which have been made through use of assets of the plan by the
> fiduciary, and shall be subject to such other equitable or remedial
> relief as the court may deem appropriate…

29 U.S.C. § 1109.

As described above, ERISA defines a fiduciary as a person who "exercises

any discretionary authority or discretionary control respecting management of

such plan or exercises any authority of control respecting management or

disposition of its assets."  29 U.S.C.  § 1002(21)(A).  Furthermore, ERISA defines a

fiduciary as a person who "has any discretionary authority or discretionary

responsibility in the administration of such plan."  Id.

Plaintiff's claims under 29 U.S.C. § 1132(a)(2) must be dismissed.  Courts, in interpreting the language of § 1132(a)(2), have stated that such a claim must "be brought in a representative capacity on behalf of the plan as a whole."  Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n.9 (1985).  Similarly, the Eighth Circuit has stated that 29 U.S.C. § 1132(a)(2) "provides relief only to a plan and not to individual beneficiaries."  Conley v. Pitney Bowes, 176 F.3d 1044, 1047 (8th Cir. 1999).  Section 1132(a)(2) "'does authorize a participant or beneficiary to seek relief for a plan' where the beneficiary produces 'evidence of a pattern or practice of fiduciary violations that require reform.'"  Mahoney v. Nw. Airlines Pension Plan for Contract Employees, No. Civ.02-4339 (MJD/JGL), 2004 WL 114946, at *5 (D. Minn. Jan. 8, 2004) (quoting Conley, 176 F.3d at 1047).

As the Complaint is currently pled, Plaintiff is not bringing his claim on behalf of the plan, but rather is seeking benefits to which he alone is entitled.  Nor does the Complaint allege a pattern or practice of fiduciary violations that requires reform.  Accordingly, to the extent that Plaintiff's Complaint asserts claims under 29 U.S.C. § 1132(a)(2), those claims must be dismissed.

Plaintiff has requested that if the Court dismisses any of his claims that he be granted leave to amend his Complaint.  "When a plaintiff request leave to

amend his complaint before trial, 'the court should freely give leave when justice

so requires.'" <u>Bailey v. Bayer Cropscience L.P.</u>, 563 F.3d 302,307 (8th Cir. 2009)

(citing Fed. R. Civ. P. 15(a)(2)).  Permission to amend may be denied where the

plaintiff is "guilty of undue delay, bad faith, dilatory motive, or if permission to

amend would unduly prejudice the opposing party."  <u>Id.</u> (citation omitted).  In

this case the Court finds no reason to deny Plaintiff leave to amend his

Complaint.  Accordingly, Plaintiff's claims under 29 U.S.C. § 1132(a)(2) are

dismissed without prejudice, and Plaintiff is granted thirty (30) days to amend

his Complaint in order to adequately plead claims under § 1132(a)(2).

### 3.   Breach of Fiduciary Duty under 29 U.S.C. § 1132(a)(3)

Plaintiff asserts that both Count I and Count IV articulate a claim for

equitable relief under 29 U.S.C. § 1132(a)(3).  This section of ERISA provides that

a plan participant may sue "to enjoin any act or practice which violates any

provision of this subchapter or the terms of the plan, or to obtain other

appropriate equitable relief (i) to redress such violations or (ii) to enforce any

provisions of this title or the terms of the plan."  29 U.S.C. § 1132(a)(3)

To the extent Count I or Count IV of Plaintiff's Complaint attempt to state

a claim under 29 U.S.C. § 1132(a)(3), those claims must be dismissed since

Plaintiff does not seek an equitable remedy.  Plaintiff's Complaint instead, seeks

money damages in the amount of $568,320, the same amount as the benefits

Plaintiff seeks.  The Eighth Circuit has held that 29 U.S.C. § 1132(a)(3) only

allows a court to award equitable relief, as opposed to money damages.  Slice v.

Sons of Norway, 34 F.3d 630, 633 (8th Cir. 1994) (citing Mertens v. Hewitt

Assocs., 508 U.S. 248, 255 (1993)).  Thus, Plaintiff is not entitled to such damages

under 29 U.S.C. § 1132(a)(3), and Counts I and IV of the Complaint must be

dismissed to the extent they arise under § 1132(a)(3).

       Moreover, to the extent Plaintiff's Complaint requests generally that the

Court grant equitable relief, any claim pursuant to § 1132(a)(3) fails because, as

pled, the purpose of this suit is Plaintiff's benefits.  In Varity Corp. v. Howe, 516

U.S. 489, 507 (1996) the Supreme Court found that an individual beneficiary may

sue under § 1132(a)(3) in order to obtain personal equitable relief.  Id. at 507.

However, where a plaintiff simply characterizes a denial of benefits as a breach

of fiduciary duty, equitable relief is not appropriate, because the plaintiff would

be able to obtain adequate relief under § 1132(a)(1)(B).  Id. at 514-15.  Equitable

relief under 29 U.S.C. § 1132(a)(3) is not "appropriate" where a plaintiff can

obtain adequate relief under § 1132(a)(1)(B), and where a plaintiff does not seek

different relief under a breach of fiduciary duty claim.  <u>Conley</u>, 176 F.3d at 1047

("[W]here a plaintiff is 'provided adequate relief by [the] right to bring a claim

for benefits under…§ 1132(a)(1)(B),' the plaintiff does not have a cause of action

to seek the same remedy under § 1132(a)(3)(B)") (quoting <u>Wald v. Sw. Bell Corp.

Customcare Medical Plan</u>, 83 F.3d 1002, 1006 (8th Cir. 1996)) ; <u>Fairview Health

Servs. v. Ellerbe Becket Co. Employee Med. Plan</u>, No. 06-2685, 2007 WL 978089,

at *6 (D. Minn. Mar. 28, 2007).

Plaintiff claims that he is entitled to obtain equitable relief, pursuant to 29

U.S.C. § 1132(a)(3), in the form of an injunction to prevent the failure of the

fiduciaries of the 793 Plan to pay the Plaintiff the benefits to which he is entitled.

However, this is the type of relief which the plaintiff sought in <u>Wald v. Sw. Bell

Corp. Customcare Medical Plan</u>, 83 F.3d 1002, 1006 (8th Cir. 1996).  In that case,

the Eighth Circuit found that plaintiff was not entitled to an injunction requiring

payment of his benefits,  because plaintiff was already afforded an adequate

remedy under 29 U.S.C § 1132(a)(1)(B).  <u>Id.</u>  To the extent that Plaintiff is making

a claim under § 1132(a)(3), the relief Plaintiff seeks is the same as his claim under

§ 1132(a)(1)(B).  Accordingly, to the extent Counts I and IV of the Complaint

assert a claim under § 1132(a)(3) they must be dismissed.  Plaintiff's claims are

dismissed without prejudice, and Plaintiff is granted thirty (30) days to amend

his Complaint to adequately plead claims under § 1132(a)(3).

### 4.    Plaintiff's Claims under 29 U.S.C. § 1132(a)(4)

Plaintiff in his memorandum explains that he is entitled to relief under 29

U.S.C. § 1132(a)(4), because ABPA, the TCIW Plan, the Plan Trustees, and

Wilson-McShane failed to fulfill their obligation to provide the Plaintiff with

accurate and timely statements concerning his future pension benefits as

required by 29 U.S.C. § 1025(c) and 26 U.S.C. § 6057.  Title 29 U.S.C. § 1132(a)(4)

states that a plan participant may sue "for appropriate relief in the case of a

violation of 1025(c) of this title."  Title 29 U.S.C. § 1025(c) states that plan

administrators must provide plan participants with individual statements

containing information that the plan administrator must register according to the

tax code, prior to such registration. Title 26 U.S.C. § 6057 explains what

information must be contained in this registration statement.  This section sets

forth that the registration statement will contain

> the name and taxpayer identifying number of each participant in the
> plan (i) who, during such plan year, separated from the service
> covered by the plan, (ii) who is entitled to deferred vested benefit
> under the plan as of the end of such plan year, and (iii) with respect
> to whom retirement benefits were not paid under the plan during
> such year.

26 U.S.C. § 6057(a)(2)(C).  This section goes on to state that "[e]ach plan administrator required to file a registration statement . . . shall, . . . also furnish to each participant described in subsection (a)(2)(C) an individual statement setting forth the information with respect to such participant required to be contained in such registration statement."  Id. § 6057(e).

The notice requirements of 29 U.S.C. § 1025(c) do not apply unless Plaintiff has separated from the service of the plan.  Ryan v. Chrysler Motors Corp., 983 F.2d 1068, 1993 WL 2298, at *2 (6th Cir. Jan. 6, 1993) (holding that, according to the statutory language, the requirements of individual notice only come into play if one or more person has separated from the plan).  Plaintiff is not separated from the TCIW Plan, because he is still receiving benefits.  Id. ("[S]ince these plaintiffs are still covered by the Chrysler plan, they have not been separated from *service* covered by the plan.").  Accordingly, Plaintiff's claim under § 1132(a)(4) are dismissed.  The Court sees no way in which Plaintiff could amend his Complaint to adequately plead a claim under § 1132(a)(4), and thus Plaintiff's claim under this section will be dismissed with prejudice.

### E.  Promissory Estoppel Claim

In Count III of the Complaint, Plaintiff alleges a claim of Promissory

Estoppel against ABPA and Wilson-McShane.  (Compl. ¶¶ 43-48.)  "The principle

of estoppel declares that a party who makes a representation that misleads

another person, who then reasonably relies on that representation to his

detriment, may not deny that representation."  <u>Chorosevic v. MetLife Choices</u>,

600 F.3d 934, 942 (8th Cir. 2010) (citation omitted).  "Courts may apply the

doctrine of estoppel in ERISA cases only to interpret ambiguous plan terms . . . ."

<u>Fink v. Union Cent. Life Ins. Co.</u>, 94 F.3d 489, 492 (8th Cir. 1996).  "Common-law

estoppel principles cannot be used to obtain benefits that are not payable under

the terms of the ERISA plan."  <u>Id.</u>  Furthermore, a Plaintiff "may not use an

estoppel theory to modify the un-ambiguous terms of an ERISA plan."

<u>Neumann v. ATT&T Commc'ns.</u>, 376 F.3d 773, 784 (8th Cir. 2004).  Moreover,

courts should, "not use federal common law to allow a damages claim against a

nonfiduciary because ERISA's carefully drafted enforcement provisions provide

strong evidence that Congress did *not* intend to authorize other remedies that it

simply forgot to incorporate expressly."  <u>Fink</u>, 94 F.3d at 493.

Plaintiff's promissory estoppel claim against ABPA must be dismissed.

Estoppel only applies in ERISA cases to interpret ambiguous plan terms.  <u>Id.</u> at

492.  Additionally, Plaintiff's estoppel cannot be used to obtain benefits which would not be payable under the TCIW Plan.  As an administrator of the former 793 Plan, ABPA has no authority to enforce the terms of the TCIW Plan. Accordingly, for the same reasons articulated above, Plaintiffs' promissory estoppel claim against ABPA must be dismissed for lack of standing, since ABPA has no power to pay Plaintiff benefits under the TCIW Plan.  See Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found., 263 F. Supp. 2d 949, 964 (E.D. Penn. 2002) (extending the lack of standing reasoning found in Hall to a claim for equitable estoppel), aff'd in relevant part, 334 F.3d 365, 383 (3d Cir. 2003).

Plaintiff has however pled sufficient facts to allow his claim of promissory estoppel to survive a motion to dismiss in relation to Wilson-McShane.  Plaintiff has pled that Defendants have calculated his monthly pension benefits according to the monetary value of the contributions made on his behalf, in contradiction to the numerous representations by Wilson-McShane that Plaintiff's monthly benefit entitlement would be calculated as a function of credited pension hours. Plaintiff has sufficiently pled that the language of the plan was ambiguous, given that Wilson-McShane allegedly represented to Plaintiff that they understood the

plan to require payment of benefits based upon credit pension hours.  Finally,

Plaintiff has pled that he detrimentally relied on these representations in

determining the amount of additional savings he would need for retirement and

in determining when he would be capable of retiring.  Thus, Plaintiff has

adequately pled facts which allow Plaintiff's promissory estoppel claim to

survive as against Wilson-McShane.

Defendants argue that Plaintiff's promissory estoppel claim against

Wilson-McShane should be dismissed because Wilson-McShane is not a fiduciary

of the TCIW Plan, and a federal common law claim, such as promissory estoppel,

should not be used to allow a damages claim against a non-fiduciary in an ERISA

case.  Fink, 94 F.3d at 493.  As mentioned above, the Court finds that Plaintiff has

pled sufficient facts to allege that Wilson-McShane is a fiduciary within the

meaning of the term, as defined by ERISA.  Accordingly, Defendants' motion to

dismiss Plaintiff's promissory estoppel claim against Wilson-McShane is denied.

## F.  Motion to Strike Jury Demand

Defendants argue that once the action is limited to a claim for benefits

under 29 U.S.C. § 1132(a)(1)(B), Plaintiff's jury demand should be stricken,

because it is clear law that a plaintiff may not try an ERISA claim to a jury.

Langelie v. Onan Corp., 192 F.3d 1137, 1141 (8th Cir. 1999) ("[T]here is no right to a jury trial under ERISA."). However, the Court holds that Plaintiff's promissory estoppel claim against Wilson-McShane survives, and thus the action is not limited to simply a claim for benefits, but includes a claim for promissory estoppel. Since the issue of whether a plaintiff is entitled to try a claim for promissory estoppel to a jury was not adequately briefed, the Court will deny Defendants' motion to strike Plaintiff's jury demand without prejudice.

## IV.    CONCLUSION

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant ABPA's Motion to Dismiss and Strike Jury Demand [Docket No. 11] is **GRANTED IN PART AND DENIED IN PART**. All claims against ABPA are **DISMISSED WITH PREJUDICE**, and ABPA is dismissed as a party to this action. Accordingly, ABPA's Motion to Strike Jury Demand is **DENIED** as moot.

2. Defendants 793 Plan's, TCIW Plan's, Plan Trustees', and Wilson-McShane's Motion to Dismiss and to Strike Jury Demand [Docket No. 7] is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. All claims against Defendant 793 Plan are **DISMISSED WITH PREJUDICE**, and the 793 Plan is dismissed as a party to this action.

   b. Count II, V, and VI are **DISMISSED WITH PREJUDICE**.

28

    c.   Count I: Violations of ERISA remains only to the extent that the claim is for benefits under 29 U.S.C. § 1132(a)(1)(B), against Wilson-McShane, the TCIW Plan, an the Plan Trustees.  Plaintiff's claims in Count I under 29 U.S.C. §§ 1132(a)(2) and (3) are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff's claim in Count I under 29 U.S.C. § 1132(a)(4) is **DISMISSED WITH PREJUDICE**.

    d.   Count III: Promissory Estoppel remains against Wilson-McShane**.**

    e.   Count IV: Breach of Fiduciary Duty is **DISMISSED WITHOUT PREJUDICE.**

    f.   Defendants 793 Plan's, TCIW Plan's, Plan Trustees', and Wilson-McShane's Motion to Strike Jury Demand is **DENIED WITHOUT PREJUDICE**.

3.    Plaintiff is granted thirty days (30) leave to amend his Complaint as described in the body of this Memorandum of Law & Order.

Date:  April 11, 2011                  s/ Michael J. Davis
                                              Michael J. Davis
                                              Chief Judge
                                              United States District Court